**ORAL ARGUMENT NOT YET SCHEDULED**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| Novartis Pharmaceuticals Corporation, *et al.*,<br><br>　　　　Plaintiffs-Appellants-<br>　　　　Cross-Appellees,<br><br>　　v.<br><br>Robert F. Kennedy, Jr., in his official capacity as Secretary, United States Department of Health and Human Services, *et al.*,<br><br>　　　　Defendants-Appellees-<br>　　　　Cross-Appellees,<br><br>　　and<br><br>340B Health, *et al.*,<br><br>　　　　Intervenors-Defendants-<br>　　　　Appellees-Cross-<br>　　　　Appellants. | Nos. 25-5177, 25-5179, 25-5220, 25-5221, 25-5223, 25-5224, 25-5226 (consolidated) |

**EMERGENCY MOTION TO DISMISS CROSS-APPEALS**

　　Plaintiffs-Appellants Novartis Pharmaceuticals Corporation, Bristol Myers Squibb Company, Eli Lilly and Company, and Lilly USA, LLC move to dismiss the cross-appeals filed by Intervenors-Defendants 340B Health, University of Massachusetts Memorial Medical Center, and Genesis Healthcare System, and

1

docketed as Nos. 25-5223, 25-5224, and 25-5226. The government takes no position and Intervenors oppose this motion.[1] Emergency treatment is warranted for this motion so that the Court decides it before Intervenors' August 1 deadline for their response-opening brief. *See* Circuit Rule 27(e) (an "emergency" motion is simply one that requires a decision "in less time than would be required for this court to receive and consider a response").

As defendants with no affirmative claims, Intervenors cannot obtain greater rights under the District Court's judgment than they already have: The District Court found against Plaintiffs on all of their claims and granted Plaintiffs no relief. Intervenors nonetheless cross-appeal because they want this Court to endorse a statutory interpretation the District Court rejected. But that is the quintessential alternative ground for affirmance that should be pressed in a response brief, not cross-appeals.

The distinction is an important one. Every improper cross-appeal imposes unnecessary costs on the parties and burdens on the Court. And those costs and burdens are particularly harmful here because Intervenors' cross-appeals—noticed

---

[1] An additional appeal by Kalderos, Inc. has been docketed as No. 25-5220 and has been consolidated into these cases. Intervenors were not parties to Kalderos's case below and therefore have not cross-appealed the judgment entered against Kalderos. For simplicity's sake, we refer to Novartis, BMS, and Lilly collectively as "Plaintiffs" and ignore Kalderos's case.

2

ten days after Plaintiffs filed an emergency motion to expedite setting forth a briefing schedule Intervenors *did not oppose*—will disrupt the very briefing schedule ordered by this Court. Intervenors' cross-appeals will also imperil an expedited early September oral-argument date, which is vital for Novartis and BMS, who need to know whether they can use their cash-rebate models to comply with a rapidly approaching statutory deadline. The Court should dismiss Intervenors' cross-appeals and do so now.

## BACKGROUND

The federal 340B Program requires pharmaceutical manufacturers to offer their medicines at significantly reduced prices to certain healthcare providers known as "covered entities." 42 U.S.C. § 256b; *see also* D. Ct. Op. 3.[2] The central dispute on appeal is how Plaintiffs effectuate the 340B price. The statute provides that "[t]he Secretary shall enter into an agreement"—known as a Pharmaceutical Pricing Agreement (PPA)—"with each manufacturer of covered outpatient drugs under which the amount required to be paid (taking into account any rebate or discount, as provided by the Secretary)" does not exceed a statutorily defined "ceiling price." 42 U.S.C. § 256b(a)(1).

Plaintiffs seek to offer the 340B price using "cash-rebate" or "cash

---

[2] Because the facts for purposes of this motion are undisputed, Plaintiffs largely rely on the District Court's opinion. *See* Circuit Rule 27(f)(2).

3

replenishment" models, under which covered entities will purchase Plaintiffs' medicines at the commercial price, submit standard utilization data, and then promptly receive cash equal to the difference between the commercial price and the 340B reduced price. D. Ct. Op. 10-11. Plaintiffs maintain that the statute expressly contemplates rebates and that any power HRSA has to regulate manufacturers' rebate models must be exercised through an amendment to manufacturers' PPAs. Because HRSA has never amended those PPAs to specify a particular payment model, Plaintiffs may immediately implement their cash-rebate models. *Id.* at 21-22.

HRSA agrees that the statute permits either rebates or discounts, but it contends that Plaintiffs may only implement a rebate model if they receive HRSA's preapproval, which HRSA has refused to provide. *See* D. Ct. Dkt. No. 31-1 at 9-18.[3] HRSA instead has threatened that if Plaintiffs proceed, they will face civil monetary penalties and termination from the 340B Program, which would leave Plaintiffs' medicines ineligible for reimbursement by Medicare Part B and Medicaid. D. Ct. Op. 13.

Two covered entities and a covered-entity association also intervened below

---

[3] Docket number cites are to the lead district court case, *Novartis Pharmaceuticals Corp. v. Becerra*, No. 1:25-cv-117-DLF (D.D.C.). For each cited docket entry, a materially identical document was filed in BMS's and Lilly's cases.

4

and have now cross-appealed. Intervenors did not assert any affirmative claims against HRSA and "agree[d]" with HRSA that Plaintiffs' "rebate model[s] [are] unlawful." D. Ct. Dkt. No. 15-1 at 3 (Intervenors' intervention motion). Intervenors sought only to provide additional "experience and data" that "the Government Defendants do not have access to" and to provide an alternative ground for holding that Plaintiffs' rebate models are currently unlawful. *Id.* at 3-4, 18-19. Specifically, Intervenors contend that Plaintiffs' rebate models are unlawful because the statute categorically forbids manufacturers from using any type of rebate model (rather than because the models have not been preapproved). *See* D. Ct. Op. 19 n.11.

The District Court agreed with the government. *Id.* at 19-22. The court held that "HRSA did not act contrary to law by requiring the plaintiffs to obtain approval before implementing their proposed rebate models." *Id.* at 22. But the court disagreed with Intervenors' reasoning, observing that because Section 340B(a)(1) "contemplates that the 'amount to be paid' by a covered entity must 'tak[e] into account any rebate or discount,' " the statute "explicitly contemplates a rebate mechanism." *Id.* at 19 n.11 (quoting 42 U.S.C. § 256b(a)(1)). The District Court therefore "den[ied] the plaintiffs' motions for summary judgment and grant[ed] the defendants' cross motions for summary judgment upholding the preapproval requirement." *Id.* at Op. 22. The District Court also stated that "[t]o the extent that the intervenors-defendants seek a declaration that rebates are categorically

5

prohibited under the 340B statute, however, that portion of their cross motion will be denied." *Id.* The District Court entered judgment against Plaintiffs. *See* D. Ct. Dkt. No. 50.

Plaintiffs Novartis and BMS immediately appealed and moved to expedite, seeking a briefing schedule that would allow their appeals to be argued in early September. They explained it was essential to have oral argument as soon as the Court resumes hearing cases, because they must know whether they can use their cash-rebate models well in advance of their January 1, 2026 statutory deadline to offer the Inflation Reduction Act's Drug Price Negotiation Program's "maximum fair price," because the model they use to offer 340B price reductions will affect their ability to comply with the Act. Expedite Mot. 11-12. The government and Intervenors took no position on expedition, but did not oppose the proposed briefing schedule if the Court determined that expedition was warranted. *Id.* at 13-14. The Court granted expedition and entered the proposed briefing schedule.

Three days later, Intervenors filed notices of cross-appeal that were "expressly limited to the portion of the District Court's judgment that denied the portion of Intervenor-Defendants' Cross Motion for Summary Judgment that sought judgment on the grounds that rebates are categorically prohibited under the 340B statute." D. Ct. Dkt. No. 59. Plaintiffs Eli Lilly and Company and Lilly USA, LLC subsequently appealed, and all of Plaintiffs' cases have been consolidated.

6

**ARGUMENT**

**I.   INTERVENORS' CROSS APPEALS SHOULD BE DISMISSED.**

1. Cross-appeals that "merely seek affirmance of a favorable judgment on alternative grounds . . . must be dismissed." *al-Suyid v. Hifter*, __ F.4th __, 2025 WL 1584228, at *2 (4th Cir. June 5, 2025) (alterations adopted and quotation marks omitted). "Cross-appeals are required only when the party prevailing below seeks to enlarge the scope of that judgment; they are not necessary when the party simply presents alternative bases for affirmance." *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 741 (D.C. Cir. 1995). That is why this Court and others dismiss cross-appeals that seek affirmance on alternative grounds. *See, e.g.*, *Harriman v. Associated Indus. Ins. Co.*, 91 F.4th 724, 727-728 (4th Cir. 2024) ("Because Associated's cross appeal merely seeks affirmance of a favorable judgment on an alternative ground, that cross appeal must be dismissed." (quotation marks omitted)); *G. David Jang, M.D. v. Boston Sci. Corp.*, 872 F.3d 1275, 1290 (Fed. Cir. 2017) (dismissing cross-appeal that "merely offers an alternative basis to affirm the judgment"); *Wyoming Outdoor Council v. U.S. Forest Serv.*, No. 97-5317, 1998 WL 202274, at *1 (D.C. Cir. Mar. 11, 1998) (per curiam) (same "because the district court's judgment favored appellees/cross-appellants and they are challenging only the reasoning of the district court rather than an order or judgment").

Yet affirmance on alternative grounds is all Intervenors can hope to get here.

7

The sole question before the Court is whether the District Court properly upheld HRSA's decision to block Plaintiffs' cash-rebate models. *See* D. Ct. Op. 15-16. The government and Intervenors have different theories as to why the District Court's ruling was correct as a statutory matter. The government believes that Section 340B(a)(1) permits HRSA to demand preapproval of manufacturers' rebate or discount models even though a preapproval requirement is not in manufacturers' PPAs. *See* D. Ct. Dkt. No. 31-1 at 9-18. Intervenors, meanwhile, believe that Section 340B(a)(1) forbids manufacturers from *ever* using a rebate model to effectuate the 340B price, so preapproval is beside the point. Under their view, HRSA rightly blocked Plaintiffs from using a model that the statute forbids. *See* D. Ct. Op. 19 n.11. But the bottom line of both the government's and Intervenors' arguments is the same: The District Court's judgment should be affirmed because HRSA correctly prevented Plaintiffs from using their proposed models.

To be sure, the District Court disagreed with Intervenors' statutory theory. *See id.* But Intervenors do not need to cross-appeal to challenge the District Court's reading of Section 340B; "it is . . . settled that the appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon [a] matter overlooked or ignored by it." *United States v. American Ry. Exp. Co.*, 265 U.S. 425, 435 (1924); *accord Jennings v. Stephens*, 574 U.S. 271,

276 (2015); *Jones v. Bernanke*, 557 F.3d 670, 676 (D.C. Cir. 2009). If Intervenors convince the Court that Section 340B(a)(1)—contrary to its text—forbids manufacturers from using rebates to effectuate the 340B price, this Court will affirm and the District Court's judgment will remain unchanged. *See Harriman*, 91 F.4th at 727-728 (dismissing cross-appeal because although "the district court did not accept every argument [the party] made and ruled against it on some matters," the appellee still prevailed on its opponent's claims and "appellate courts review 'judgments not statements in opinions' " (citation omitted)).

Nor is a cross-appeal necessary for Intervenors to secure more favorable precedent from this Court or to otherwise expand the issue-preclusive scope of the District Court's judgment, such as by convincing this Court to hold that manufacturers may never effectuate the 340B price through a rebate model. As the Supreme Court has explained, "[w]henever an appellee successfully defends a judgment on an alternative ground, he changes what would otherwise be the judgment's issue-preclusive effects"; "issue preclusion no longer attaches to the ground on which the trial court decided the case, and instead attaches to the alternative ground on which the appellate court affirmed the judgment." *Jennings*, 574 U.S. at 278. A theory that would make a cross-appeal's propriety turn on whether an appellate decision will expand the preclusive effect of the judgment below would be nonsensical. It "would require [a] cross-appeal for *every* defense of

9

a judgment on alternate grounds. That is, of course, the polar opposite of the rule [the Supreme Court] established in *American Railway*." *Id.*

2. Intervenors' notices of cross-appeal mention the District Court's statement that the court denied their motion for summary judgment in part. *See* D. Ct. Op. 22. But the District Court was simply incorrect that it had denied Intervenors summary judgment in part; what Intervenors sought in their summary-judgment motion was an order rejecting Plaintiffs' claims. *See* D. Ct. Dkt. No. 32-3 at 2. And that is exactly what Intervenors got, even though the District Court disagreed with one of their statutory arguments along the way.

The District Court also stated it was denying Intervenors summary judgment "[t]o the extent that the intervenors-defendants seek a declaration that rebates are categorically prohibited under the 340B statute." *Id.* The District Court's statement was wisely conditional: Intervenors *weren't* seeking a declaration that rebates are categorically prohibited under the 340B statute. Intervenors did not file a cross-complaint against the government, and Intervenors did not seek a declaratory judgment—or any other form of relief—against the government. For a simple reason: Intervenors couldn't. The Declaratory Judgment Act does not provide a freestanding cause of action, *see Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011), so without a claim under some *other* statute, the District Court could not grant them

10

a declaratory judgment construing Section 340B(a)(1).[4] And Intervenors' lack of an independent cause of action reaffirms what Plaintiffs have explained: Although Intervenors seek *precedent* that rebate models are categorically impermissible, the only *judgment* this Court can award them is one affirming the District Court's rejection of Plaintiffs' claims. *See Jennings*, 574 U.S. at 277 (distinguishing "lower courts' opinions" from "their *judgments*").

Finally, even if Intervenors had somehow properly asserted a declaratory-judgment cross-claim against the government, this Court still would not have jurisdiction over Intervenors' cross-appeals because Intervenors do not have standing to appeal. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997) (standing requirement "must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance"). "The most obvious difference between standing to appeal and standing to bring suit is that the focus shifts to injury caused by the judgment rather than injury caused by the underlying facts." *Natural Res. Def. Council v. Pena*, 147 F.3d 1012, 1018 (D.C. Cir. 1998) (citation omitted). So the standing question for Intervenors' cross-appeals

---

[4] Likewise, Intervenors could not bring an Administrative Procedure Act claim because they were not "adversely affected or aggrieved by agency action." 5 U.S.C. § 702. For the reasons explained elsewhere, Intervenors *benefitted* from HRSA's actions, which rejected manufacturers' proposed rebate models. *See infra* p. 12; *see also* Plaintiffs-Appellants Br. 49-54.

11

is whether they have "experienced an injury 'fairly traceable to the judgment below.'" *West Virginia v. EPA*, 597 U.S. 697, 718 (2022) (quoting *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 432-433 (2019)) (emphasis omitted).

Intervenors have not. The District Court granted Intervenors intervention on the view that, if Plaintiffs were permitted to implement their cash-rebate models, Intervenors "would incur additional upfront costs to pay full sticker prices for the 340B drugs." D. Ct. Dkt. No. 27 at 3. But under the District Court's judgment upholding HRSA's decision to block Plaintiffs' models, Intervenors no longer face that potential harm. If HRSA approves Plaintiffs' cash-rebate models at some later point, Intervenors' claimed costs could potentially give them standing to challenge HRSA's approvals. But Intervenors' injuries, if any, would be traceable to HRSA's decision to approve the cash-rebate model, not the District Court's judgments in these cases. Intervenors are not entitled to an advisory opinion construing Section 340B(a)(1) when the District Court's judgments do not injure them in any way.

## II. THE COURT SHOULD GRANT DISMISSAL NOW RATHER THAN REFERRING THE MOTION TO THE MERITS PANEL.

The Court should dismiss Intervenors' cross-appeals now. A party that takes an unnecessary cross-appeal commits more than a procedural foot fault; "[c]ross-appeals for the sole purpose of making an argument in support of the judgment are worse than unnecessary." *Crocker*, 49 F.3d at 741 (quoting *Jordan v. Duff & Phelps, Inc.*, 815 F.2d 429, 439 (7th Cir. 1987)). Improper cross-appeals "disrupt the

12

briefing schedule . . . and they make the case less readily understandable to the judges. The arguments will be distributed over more papers, which also tend to be longer." *Id.* (quoting *Jordan*, 815 F.2d at 439). So "[t]his is not just an academic point. Cross-appeals are inefficient. They 'complicate[] briefing schedules and the number and length of the briefs in ways that may generate more confusion than enlightenment.'" *Domain Prot., L.L.C. v. Sea Wasp, L.L.C.*, 23 F.4th 529, 539 (5th Cir. 2022) (quoting *Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 11 F.4th 345, 350 (5th Cir. 2021) (per curiam)) (second brackets in original). Unnecessary cross-appeals, in short, impose unnecessary burdens on litigants and courts alike.

These practical harms are particularly acute here. Intervenors' cross-appeals will increase the number of the briefs from four—an opening brief, a government response brief, an intervenor response brief, and a reply brief—to six, because the government will need a brief as cross-appellee to respond to Intervenors' cross-appeal arguments and Intervenors will receive a cross-reply brief as of right. Intervenors' cross-appeals also have the potential to add as many as 26,000 words to the case—6,500 more words when what would have been Plaintiffs' reply brief becomes a response-reply brief, 13,000 more words for the government's cross-response brief, and 6,500 words for Intervenors' cross-reply brief. *See* Fed. R. App. P. 28.1(e)(2).

Worst of all, tacking on a period at the end of the existing negotiated briefing

13

schedule—which Intervenors did not oppose, and which they only sought to adjust *ten days later* after filing their notices of appeal—to accommodate Intervenors' cross-reply will imperil the expedition this Court already ordered with a goal of setting the case for an early September oral argument. As Novartis and BMS explained in their motion to expedite, they have to comply with the Centers for Medicare & Medicaid Services' requirement to submit a written implementation plan for effectuating the Inflation Reduction Act's Drug Price Negotiation Program's "maximum fair price" by September 1, 2025, without knowing whether they can use their cash-rebate models to do it. Expedite Mot. 11-12. Delaying oral argument to let Intervenors write an improper cross-reply brief imperils Novartis's and BMS's ability to learn whether they can use their cash-rebate models in advance of their statutory January 1, 2026 deadline to actually begin offering the "maximum fair price" on eligible prescriptions—undermining the very reason the Court granted expedition in the first place. *See id.*

The Court should therefore grant the motion to dismiss Intervenors' improper cross-appeals now, because even if the merits panel eventually dismisses the cross-appeals, the damage will already be done. Judicial and party resources will be wasted and additional time will be consumed—all for cross-appeals that should have never been filed in the first place. Intervenors are free to argue their atextual reading

14

of Section 340B(a)(1) in their response brief, but the parties and the Court should not have to suffer through improper cross-appeals for Intervenors to do it.

## CONCLUSION

For the foregoing reasons, Intervenors' cross-appeals should be dismissed.

Respectfully submitted,

/s/ Sean Marotta

JOHN C. O'QUINN
MEGAN MCGLYNN
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 389-5000

*Counsel for Eli Lilly and Company and Lilly USA, LLC*

June 23, 2025

SEAN MAROTTA
KEENAN ROARTY
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
Telephone: (202) 637-4881
Facsimile: (202) 637-5910
sean.marotta@hoganlovells.com

JACKSON B. SKEEN
HOGAN LOVELLS US LLP
125 High Street
Suite 2010
Boston, MA 02110

*Counsel for Novartis Pharmaceuticals Corporation, Bristol Myers Squibb Company, Eli Lilly and Company, and Lilly USA, LLC*

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limits of Fed. R. App. P. 27(d)(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,118 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Office 365 in 14-point Times New Roman.

/s/ Sean Marotta
Sean Marotta

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2025, the foregoing was electronically filed through this Court's CM/ECF system, which will send a notice of filing to all registered users.

<u>/s/ Sean Marotta</u>
Sean Marotta