**ORAL ARGUMENT NOT YET SCHEDULED**
**Nos. 25-5177, 25-5179, 25-5220, 25-5221, 25-5223, 25-5224, 25-5226**

# In the United States Court of Appeals for the District of Columbia Circuit

———————————

NOVARTIS PHARMACEUTICALS CORPORATION, ET AL.,
*Plaintiffs-Appellants-Cross-Appellees*,

*v.*

ROBERT F. KENNEDY, JR., IN HIS OFFICIAL CAPACITY AS SECRETARY, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, ET AL.,
*Defendants-Appellees-Cross-Appellees*,

340B HEALTH, ET AL.,
*Intervenors-Defendants-Appellees-Cross-Appellants.*

———————————

On Appeal from the United States District Court for the
District of Columbia, Nos. 21-cv-2608, 24-cv-3220, 24-cv-3337, 25-cv-117
(Hon. Dabney L. Friedrich)

———————————

**BRIEF OF JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.
AS *AMICUS CURIAE* IN SUPPORT OF REVERSAL**

Paula R. Ramer
ARNOLD & PORTER
  KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Tel: (212) 836-8000

Jeffrey L. Handwerker
Samuel I. Ferenc
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Tel: (202) 942-5000
jeffrey.handwerker@arnoldporter.com

*Counsel for Amicus Curiae Johnson & Johnson Health Care Systems Inc.*

## CERTIFICATE AS TO PARTIES, RULINGS, AND
## RELATED CASES PURSUANT TO CIRCUIT RULE 28(a)(1)

**A. Parties and Amici.** Except for the following, all parties, intervenors, and amici appearing before the district court and in this Court are listed in the Brief for Plaintiffs-Appellants:

Amici: ADAP Advocacy; Pharmaceutical Research and Manufacturers of America; Biotechnology Innovation Association; American Hospital Association; National Association of Children's Hospitals, Inc.; Association of American Medical Colleges; America's Essential Hospitals; Washington Legal Foundation; Community Oncology Alliance, Inc.; Arizona Hospital and Healthcare Association; Arkansas Hospital Association; California Hospital Association; Colorado Hospital Association; Connecticut Hospital Association; Delaware Healthcare Association; Florida Hospital Association; Georgia Hospital Association; Greater New York Hospital Association; Healthcare Association of Hawaii; Healthcare Association of New York State; Hospital Association of Oregon; Idaho Hospital Association; Illinois Health and Hospital Association; Indiana Hospital Association; Iowa Hospital Association; Kentucky Hospital Association; Louisiana Hospital Association; Massachusetts Health & Hospital Association; Michigan Health & Hospital Association; Mississippi Hospital Association; Missouri Hospital Association; New Jersey Hospital Association; New Mexico Hospital Association; North Carolina Healthcare Association; North Dakota Hospital Association; Ohio

Hospital Association; Oklahoma Hospital Association; Tennessee Hospital Association; Hospital and Healthsystem Association of Pennsylvania; Texas Hospital Association; Vermont Association of Hospitals and Health Systems; Virginia Hospital & Healthcare Association; Washington State Hospital Association; West Virginia Hospital Association; Wisconsin Hospital Association; Wyoming Hospital Association.

**B. Ruling Under Review.** An accurate reference to the ruling at issue appears in the Brief for Plaintiffs-Appellants.

**C. Related Cases.** An accurate description of all related cases appears in the Brief for Plaintiffs-Appellants.

/s/ Jeffrey L. Handwerker
Jeffrey L. Handwerker

## CORPORATE DISCLOSURE STATEMENT PURSUANT TO CIRCUIT RULE 26.1

Johnson & Johnson Health Care Systems Inc. is wholly owned by Johnson & Johnson, a publicly traded corporation incorporated under the laws of New Jersey. No other company has a 10% or greater ownership interest in Johnson & Johnson Health Care Systems Inc.  Johnson & Johnson Health Care Systems Inc. provides contracting, supply chain, and business support services to other Johnson & Johnson companies and has developed and sought to implement a rebate model for the 340B Program that is similar to those developed by Plaintiffs-Appellants-Cross-Appellees and at issue in this case.

/s/ Jeffrey L. Handwerker

Jeffrey L. Handwerker

**STATEMENT REGARDING CONSENT TO FILE AND
SEPARATE BRIEFING PURSUANT TO CIRCUIT RULE 29**

All parties have consented to the filing of this *amicus curiae* brief. Pursuant to Circuit Rule 29(d), *amicus* certifies that a separate brief is necessary to provide insight into portions of the consolidated administrative record that relate primarily to *amicus*'s experience with audits under the 340B Program.

/s/ Jeffrey L. Handwerker
Jeffrey L. Handwerker

## STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS PURSUANT TO RULE 29

No party's counsel authored this brief in whole or in part, and no party or party's counsel contributed money that was intended to fund the preparation or submission of this brief.

/s/ Jeffrey L. Handwerker
Jeffrey L. Handwerker

# GLOSSARY

| | |
|---|---|
| **HHS** | U.S. Department of Health and Human Services |
| **HHS-OIG** | HHS Office of Inspector General |
| **HRSA** | Health Resources and Services Administration |
| **PPA** | Pharmaceutical Pricing Agreement |

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND
RELATED CASES PURSUANT TO CIRCUIT RULE 28(a)(1) ..................i

CORPORATE DISCLOSURE STATEMENT PURSUANT TO
CIRCUIT RULE 26.1 ....................................................................... iii

STATEMENT REGARDING CONSENT TO FILE AND
SEPARATE BRIEFING PURSUANT TO CIRCUIT RULE 29 .................iv

STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS
PURSUANT TO RULE 29 ............................................................v

GLOSSARY ........................................................................................vi

TABLE OF AUTHORITIES ............................................................ viii

INTEREST OF *AMICUS CURIAE* ....................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT .......................................3

ARGUMENT ........................................................................................5

     A.     Congress Granted Audit Rights in an Effort to Help HRSA and
Manufacturers Protect Program Integrity................................5

     B.     Covered Entity Obstruction Renders Audit Rights Effectively
Futile for Addressing Program Abuse....................................9

CONCLUSION ....................................................................................15

CERTIFICATE OF COMPLIANCE ....................................................16

CERTIFICATE OF SERVICE .............................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Or. Health & Sci. Univ. v. Engels*,
   No. 24-cv-2184, 2025 WL 1707630 (D.D.C. June 17, 2025) ........4, 6, 11, 13, 14

**Statutes**

42 U.S.C.
   § 256b.................................................................................................................1
   § 256b(a)(1) ......................................................................................................3
   § 256b(a)(4) ...................................................................................................4, 6
   § 256b(a)(5)(A) .................................................................................................4
   § 256b(a)(5)(B) .................................................................................................4
   § 256b(a)(5)(C) .....................................................................................4, 6, 8, 10
   § 256b(d)(3)(A) .................................................................................................8

**Legislative Materials**

H.R. Rep. No. 102-384, pt. 2 (1992) ..................................................................5, 9

**Regulations**

61 Fed. Reg. 65,406 (Dec. 12, 1996)...............................................................6, 7, 8

89 Fed. Reg. 28,643 (Apr. 19, 2024) ....................................................................8

## INTEREST OF *AMICUS CURIAE*

*Amicus* Johnson & Johnson Health Care Systems Inc. ("J&J"), a manufacturer of prescription medicines, has been a proud participant in the 340B federal drug pricing program, 42 U.S.C. § 256b ("340B Program"), for more than thirty years.  Like the appellants in these consolidated actions, J&J recently sought to implement a 340B rebate model.  J&J's rebate model as proposed would have a limited scope, applying only to two of its products when sold to disproportionate share hospitals (DSH), which are typically large, sophisticated hospital systems that can generate billions of dollars in revenue, employ thousands or tens of thousands of people, and utilize complex data systems.  As with appellants' rebate models, the Health Resources and Services Administration ("HRSA") has purported to reject J&J's model as violating the 340B statute.  J&J is challenging that decision and the statutory interpretation on which it was based in its own litigation, in which cross-motions for summary judgment are currently pending before Judge Contreras in the United States District Court for the District of Columbia.

In supporting reversal of the decision below, J&J wishes to draw the Court's attention to a key aspect of this dispute: manufacturer audits of covered entities. Appellees and their supporting intervenors argued in the district court that manufacturers' statutory rights to audit covered entities obviate the need for rebate models to address program abuse.  But J&J's experience with audits over the past

1

14 months, which is described in the Administrative Record in this case, proves otherwise.  Last year, J&J obtained HRSA approval to audit a dozen entities for which J&J had observed significant and anomalous increases in 340B purchasing of J&J drugs.  Yet more than a year later, J&J's auditor has not been able to conduct a single step in connection with many of the audits.  Instead of cooperating, as the 340B statute requires them to do, nearly all of the covered entities fervently resisted.  Six covered entities even sued HRSA to overturn the audit approvals, after aggressively campaigning to delay and obstruct J&J's exercise of its statutory rights.  J&J submits this brief to highlight this record and demonstrate for the Court the clear inadequacy of audits as a mechanism for combatting abuse.

2

## INTRODUCTION AND SUMMARY OF ARGUMENT

Johnson & Johnson Health Care Systems Inc. ("J&J") has been a proud participant in the 340B Program for more than three decades. J&J is committed to the original purpose of the program as Congress established it in 1992: helping uninsured and indigent patients gain greater access to reduced-cost medications. But more than three decades later, the 340B Program is being regularly exploited by entities it was never intended to benefit, as appellants in this action have detailed. Like appellants here, J&J seeks to implement a 340B rebate model to help restore program integrity and comply with its urgent obligations under the Inflation Reduction Act, but it has been threatened by HRSA with termination from the program if it proceeds. *See* JA454-55. J&J agrees with appellants that manufacturers do not need HRSA preapproval to implement 340B rebate models and that any power HRSA has to address pricing mechanisms can be exercised, if at all, only through the agency's Pharmaceutical Pricing Agreements ("PPAs") with manufacturers.[1]

---

[1] Cross-motions for summary judgment are pending in J&J's separate lawsuit challenging HRSA's rejection of its rebate model, which would apply to purchases by DSH covered entities of two J&J drugs that have been selected for the Medicare Drug Price Negotiation Program under the Inflation Reduction Act, which takes effect January 1, 2026. *Johnson & Johnson Health Care Systems Inc. v. Kennedy*, No. 1:24-cv-3188 (D.D.C. filed Nov. 12, 2024). J&J's arguments for the legality of its rebate model overlap with those advanced by appellants here, but differ in some respects. For example, J&J argues that HRSA lacks any authority to direct a 340B pricing mechanism, and that the "taking into account" parenthetical in 42 U.S.C.

J&J offers this amicus brief to describe its experience with covered entity audits. The government and intervenors argued below, and surely will again here, that audits under 42 U.S.C. § 256b(a)(5)(C) are an effective way for manufacturers to address suspected program abuse, mitigating the need for rebate models. But J&J's experience puts the lie to that claim. Over the past 14 months, J&J has sought to audit a dozen covered entities to evaluate their compliance with the 340B statute's prohibitions on diversion and duplicate discounting. *See* 42 U.S.C. § 256b(a)(5)(A)-(B). Even though the statute directs that each "covered entity shall permit … manufacturer[s]" to audit at the manufacturers' expense, *id.* § 256b(a)(5)(C)—and makes cooperation with audits a condition of eligibility for the program, *id.* § 256b(a)(4)—most of the covered entities have fought tooth and nail to delay and obstruct J&J's efforts. Several have raised baseless process objections and illusory privacy and security concerns, and six even sued HRSA, claiming its approvals of J&J's audit plans were unlawful.[2] As a result, J&J is no closer today to conducting its duly authorized audits of those entities than when HRSA approved them approximately one year ago.

_____

§ 256b(a)(1) empowers the agency only to require specific accounting mechanisms or recordkeeping practices in order to ensure that the "amount required to be paid" by covered entities does not exceed the 340B ceiling price.

[2] Five of those suits were dismissed last week; the sixth is not yet fully briefed. *Or. Health & Sci. Univ. v. Engels*, No. 24-cv-2184, 2025 WL 1707630, at *9 (D.D.C. June 17, 2025) (granting motions to dismiss five complaints); *Univ. of Kan. Hosp. Auth. v. Kennedy, et al.*, No 1:25-cv-00549 (D.D.C. filed Feb. 24, 2025).

4

Moreover, even if the covered entities had cooperated, audits serve a different purpose than, and are not comparable to or a substitute for, rebate models. By definition, audits are backward-looking, can only detect past non-compliance and cannot ensure future compliance, can address only a narrow subset of historical claims, can take months or even years to complete, can be conducted only for a handful of entities per year at most, and do not require covered entities to change the policies or procedures that led to any identified violations. As a result—and especially in light of covered entities' ability to resist them—audits are a profoundly inefficient tool for addressing program abuse. Indeed, J&J's experience, which is documented in the parties' joint appendix and judicially noticeable materials, shows that they border on futile. To the extent the district court below accepted the contrary position and found that manufacturer audit rights obviate the need for rebate models, that was error that this Court should reverse. If anything, the covered entity defiance of J&J's audits demonstrates why rebate models are essential for restoring integrity in the 340B Program.

## ARGUMENT

### A.   Congress Granted Audit Rights in an Effort to Help HRSA and Manufacturers Protect Program Integrity

In enacting Section 340B, Congress sought to balance its goal of increasing patient access against the need to "assure the integrity of the drug price limitation program." H.R. Rep. No. 102-384, pt. 2, at 16 (1992). To that end, Congress

authorized HRSA and manufacturers to conduct audits of covered entities' compliance with the program's prohibitions on diversion and duplicate discounting:

> A covered entity *shall permit the Secretary and the manufacturer* of a covered outpatient drug that is subject to an agreement under this subsection with the entity (acting in accordance with procedures established by the Secretary relating to the number, duration, and scope of audits) to audit at the Secretary's or the manufacturer's expense the records of the entity that directly pertain to the entity's compliance with the requirements described in subparagraphs (A) or (B) with respect to drugs of the manufacturer.

42 U.S.C. § 256b(a)(5)(C) (emphasis added).

As the text makes clear, manufacturers have a statutory right to conduct audits, subject only to "procedures" relating to their "number, duration, and scope." *Id.* Covered entities, in turn, have a statutory duty to cooperate with such audits. In fact, Congress confirmed the seriousness of that obligation by making compliance with audits a condition of covered entities' eligibility for the 340B Program. *Id.*; *id.* § 256b(a)(4). Therefore, a covered entity's failure to comply with an audit is grounds for its termination from the 340B Program. *See, e.g.*, Ex. 5 to Mot. for TRO, *Or. Health & Sci. Univ. v. Engels*, No. 24-cv-2184 (D.D.C. Nov. 22, 2024), ECF No. 16-5 (HRSA letter to covered entity confirming that failure to permit an audit violates the conditions of 340B eligibility).

In 1996, HRSA published a Federal Register notice titled "Manufacturer Audit Guidelines and Dispute Resolution Process," which remains in effect. 61 Fed.

Reg. 65,406 (Dec. 12, 1996).  The 1996 audit guidelines include certain provisions applying the statutory text that authorizes HRSA to establish procedures relating to the number, duration, and scope of manufacturer audits.  For example, per the guidelines, HRSA allows only one audit of a covered entity at a time; manufacturers may access only covered entity records "that directly pertain to the potential 340B violation(s)" at issue; and audits "normally" must be limited to one year.  *Id.* at 65,409-10.  As a result, only a small fraction of 340B purchases can ever be reviewed through audits, and abuse can only be identified years after it occurs.

The 1996 guidelines also set out procedural and substantive directives on topics that go beyond the number, duration, and scope of audits.  Among other things, the guidelines assert that a manufacturer may conduct an audit "only when it has documentation which indicates that there is reasonable cause," meaning that "a reasonable person could believe that a covered entity may have violated" the duplicate discount or diversion prohibitions.  *Id.* at 65,409.  In other words, the guidelines require that the manufacturer submit to HRSA its grounds for suspecting non-compliance before it initiates an audit, which may include "[s]ignificant changes in quantities of specific drugs ordered by a covered entity."  *Id.* at 65,406. If HRSA finds that a manufacturer's reasonable cause showing is sufficient, and that it submitted a satisfactory audit work plan, HRSA "will not intervene" in an audit as

long as it is conducted by "an independent public accountant" and not internal manufacturer personnel. *Id.* at 65,409-10.[3]

At the completion of an audit, the manufacturer's auditors "must prepare an audit report," which the manufacturer must submit to the covered entity, HRSA, and the HHS Office of Inspector General ("HHS-OIG"). *Id.* at 65,410. The covered entity then has 30 days to respond to the report and to state whether it agrees or disagrees with its findings. *Id.* HRSA then considers the audit findings and the covered entity's response, and HHS-OIG reviews any findings of violations for possible further investigation. *Id.* at 65,408, 65,411. Manufacturers may also initiate proceedings against the covered entity through HRSA's Administrative Dispute Resolution ("ADR") program. *See* 42 U.S.C. § 256b(d)(3)(A) (requiring manufacturers to complete an audit before bringing an ADR complaint); 89 Fed.

---

[3] Notably, the 340B statute does not authorize any of these requirements. Nothing in the statute requires a manufacturer to have "reasonable cause" to believe that a covered entity may have violated the duplicate discount or diversion prohibitions, to confer with the covered entity before submitting an audit plan to HRSA, or to hire an independent auditing firm. *See* 61 Fed. Reg. at 65,409-10. In fact, the statute by its text places no audit-related burdens on manufacturers at all besides covering the audit expenses; instead, it grants manufacturers an unconditional right to audit a covered entity's records relating to its compliance with the duplicate discounting and diversion prohibitions, subject solely to HRSA procedures regarding the "number," "scope," and "duration" of audits. 42 U.S.C. § 256b(a)(5)(C). The only *duty* the audit provision imposes is on *covered entities*, who "*shall permit* the Secretary and the manufacturer of a covered outpatient drug … to audit at the Secretary's or the manufacturer's expense the records of the entity" that pertain to the entity's compliance with the duplicate discounting and diversion prohibitions. *Id.* (emphasis added).

Reg. 28,643, 28,644 (Apr. 19, 2024) (HRSA rule establishing ADR procedures and noting that audits are a prerequisite for manufacturer ADR complaints).

### B.    Covered Entity Obstruction Renders Audit Rights Effectively Futile for Addressing Program Abuse

In theory, the statutory audit provisions implement Congress's intent to give manufacturers a role in helping "assure the integrity of the drug price limitation program." H.R. Rep. No. 102-384, pt. 2, at 16. In J&J's experience, however, because audits take so long to initiate (let alone complete), because their scope is necessarily limited, and because they cannot require changes in covered entity policies or procedures, audits are completely insufficient to address program abuse.

In early 2024, J&J observed concerning trends in the volume of 340B-priced purchases of its drugs, with several covered entities having significantly increased their 340B purchasing of J&J products over the preceding 12 months. JA1037. 340B-priced sales of J&J's product STELARA, for example, jumped by more than 200% at one covered entity. JA1037. J&J's data review also revealed thousands of transactions in which DSH covered entities received a 340B discount and then submitted or caused to be submitted a claim for a Medicaid rebate—apparent duplicate discounting in violation of the 340B statute. JA1061.

In April 2024, J&J contacted several of the covered entities that had significantly increased their 340B purchasing of J&J products during the preceding year. JA1038-39. J&J attempted to engage these entities in good-faith discussions

so that J&J could better understand the drivers of this increased utilization and to ensure that the increases were not the result of duplicate discounts or diversion. Unfortunately, most of the entities offered little substantive response to J&J. Several refused to provide information unless J&J first produced evidence of specific noncompliance, even though the 340B statute grants manufacturers audit rights precisely so that they can *obtain* such evidence. JA1039.

Facing this resistance, J&J sought and obtained HRSA's approval to conduct audits of several covered entities. JA1038. Yet, instead of cooperating with the duly authorized audits—as the 340B statute required them to do, 42 U.S.C. § 256b(a)(5)(C)—many of the entities resisted, obfuscated, and further delayed. JA1039-40; *see also, e.g.*, JA640. Several hired outside counsel and refused to provide documents or information requested by J&J's independent auditor, raising objections that are not valid under the statute. JA1040. Some also aggressively lobbied HRSA to rescind the audit approvals. JA1040. Counsel for the entities additionally demanded that J&J produce all correspondence with HRSA that led to HRSA's approval of the audit requests, but refused to agree to use the information solely for audit purposes. JA1040; *see also* Ex. 1 to Compl., *Johnson & Johnson Health Care Systems Inc.*, No. 1:24-cv-3188 (D.D.C. Nov. 12, 2024), ECF No. 1-1 (J&J letter to HRSA describing audit obstruction).

10

Eventually, six of the covered entities filed suit against HRSA seeking to halt the approved audits. *Or. Health & Sci. Univ. v. Engels, et al.*, No. 1:24-cv-02184 (D.D.C. filed July 24, 2024); *MaineGeneral Med. Ctr. v. Engels, et al.*, No. 1:24-cv-02187 (D.D.C. filed July 24, 2024); *Univ. of Rochester v. Engels, et al.*, No. 1:24-cv-02268 (D.D.C. filed Aug. 1, 2024); *Children's Nat'l Med. Ctr v. Engels, et al.*, No. 1:24-cv-02563 (D.D.C. filed Sept. 6, 2024); *Univ. of Wash. Med. Ctr. v. Kennedy, et al.*, No. 1:24-cv-02998 (D.D.C. filed Oct. 22, 2024); *Univ. of Kan. Hosp. Auth. v. Kennedy, et al.*, No 1:25-cv-00549 (D.D.C. filed Feb. 24, 2025).[4]

The district court dismissed the first five of these cases last week, holding that HRSA's audit approvals were not final agency action subject to judicial review and that the audits could therefore proceed. *Or. Health & Sci. Univ. v. Engels*, No. 24-cv-2184, 2025 WL 1707630, at *9 (D.D.C. June 17, 2025).[5] Yet more than a year after HRSA approved J&J's audit plans, J&J's auditor has not been able to conduct a single substantive step in connection with the audits of these entities, even though

---

[4] *See* Br. of Johnson & Johnson Health Care Sys. Inc. as *Amicus Curiae*, *Univ. of Kan. Hosp. Auth.*, No. 1:25-cv-549 (D.D.C. June 6, 2025), ECF No. 13-1 (J&J amicus brief detailing efforts to engage in good faith pre-audit discussions with the covered entity and then to carry out the audit once approved); *Or. Health & Sci. Univ.*, No. 1:24-cv-2184 (D.D.C. Dec. 12, 2024), ECF No. 20-1 (same as to another plaintiff entity); *MaineGeneral Med. Ctr.*, No. 1:24-cv-2187 (D.D.C. Dec. 18, 2024), ECF No. 21-1 (same for actions by three further covered entities); *Univ. of Wash. Med. Ctr.*, No. 1:24-cv-2998 (D.D.C. Jan. 21, 2025), ECF No. 28-1 (same for an additional entity).

[5] The court granted J&J's motions for leave to file amicus briefs in each dismissed case. 2025 WL 1707630 at *9. The sixth case is not yet fully briefed.

no court order or other authority allowed the entities to refuse to cooperate pending litigation. Through their delay and obstruction, the covered entities have successfully denied J&J its audit rights for the last twelve months, and may well prolong the process even further by filing appeals.

J&J's experience makes clear that audits are not an adequate tool for addressing program integrity concerns, contrary to arguments by the government and intervenors in their district court briefing. The government asserted below (except in J&J's case, tellingly) that manufacturers "can audit covered entities to ensure compliance with the terms of the program" and thus do not need rebate models "to ensure the program's integrity." Defs.' Mem. of P. & A. in Supp. of Cross-Mot. for Summ. J. at 20, *Novartis Pharms. Corp. v. Kennedy*, No. 1:25-cv-117 (D.D.C. Mar. 17, 2025), ECF No. 31-1; *see also id.* at 28. Even if the covered entities J&J sought to audit had cooperated, however, audits cannot "ensure compliance," but rather can only detect past non-compliance, and only on a limited scale, at great expense, and with no ability to require any prospective changes to covered entity policies and procedures that led to uncovered violations.

Intervenors similarly argued that "Congress gave manufacturers an explicit mechanism … to ensure compliance with the statute," and that manufacturers "may audit Providers" whenever they "believe that 340B Providers have violated the statute's prohibition on duplicate discounts or diversion." Intervenor Defs.' Br. in

Supp. of Cross-Mot. for Summ. J. at 25-27, *Novartis Pharms. Corp.*, No. 1:25-cv-117 (D.D.C. Mar. 18, 2025), ECF No. 32-1.  Strikingly, intervenors also asserted that "[m]anufacturers must meet a fairly low bar in order to audit 340B providers." *Id.* at 15 n.29.  That claim assuredly does not reflect the reality of J&J's audits, with which many covered entities have refused to cooperate unless J&J produces its audit proposal documents and specific evidence of noncompliance, none of which the entities would agree to keep confidential.  Whatever litigation positions their colleagues and representatives may take about a "low bar" for manufacturer audits, covered entities clearly take the opposite view in practice.

It also bears emphasis that audits are not a substitute for a rebate model at a practical level. By definition, audits are backward-looking, address a very narrow subset of historical claims—often only a small sampling of units of the manufacturer's drugs that had been previously purchased by the covered entity—and take months or, in J&J's case, years to complete.  *See, e.g.*, Compl. Ex. 2, *Or. Health & Sci. Univ.*, No. 24-cv-2184 (D.D.C. July 24, 2024), ECF No. 1-2 (letter to covered entity concerning HRSA-approved J&J audit plan); *see also* JA636, JA640. In contrast, though they can vary in form and scope, 340B rebate models generally require a smaller set of commercially-standard data elements, apply prospectively, and employ real-time data validation to confirm merely that the units of drug were purchased and dispensed by a 340B-eligible entity.  *See* JA506-07, JA1062-63

(identifying required data elements for J&J's proposed rebate model); JA604-05 (HRSA analysis of availability of this data).[6]   J&J's intended audits thus serve a different purpose from its proposed rebate model, even if every covered entity complied.

J&J has done all it can to report covered entities' obstruction of its audits to HRSA.  And, to be sure, HRSA warned the offending covered entities that they risk termination from the 340B Program if their non-compliance with J&J's audits continued.  *See Or. Health & Sci. Univ.*, No. 24-cv-2184, 2025 WL 1707630, at *6 n.6.  But to date, the fact remains that whatever audit rights the 340B statute grants J&J in theory, covered entities have rendered them ineffective, inefficient, and essentially futile in fact.  A statutory audit right is no right at all if the selected covered entities can simply refuse to participate.

\*                      \*                      \*

Plainly, audits alone are not sufficient to address abuse in the 340B Program.  If anything, J&J's audit experience shows just how critical rebate models are for helping to restore 340B program integrity, and should therefore be considered in an analysis of the legality and reasonableness of the HRSA decisions appellants challenge here.

---

[6] The record contains extensive evidence of the benefits of rebate models and the minimal burden they would impose for covered entities.  *See, e.g.*, JA493-96; JA622-23; JA628-30; JA1030-49; JA1054-66.

## CONCLUSION

For the foregoing reasons, J&J respectfully requests that the Court reverse the district court's order and remand with instructions to vacate HRSA's disapprovals of appellants' rebate models.

Dated: June 25, 2025

Respectfully submitted,

/s/ *Jeffrey L. Handwerker*

| | |
|---|---|
| Paula R. Ramer | Jeffrey L. Handwerker |
| ARNOLD & PORTER | Samuel I. Ferenc |
| KAYE SCHOLER LLP | ARNOLD & PORTER |
| 250 West 55th Street | KAYE SCHOLER LLP |
| New York, NY 10019-9710 | 601 Massachusetts Ave., NW |
| Tel: (212) 836-8000 | Washington, DC 20001-3743 |
| | Tel: (202) 942-5000 |
| | jeffrey.handwerker@arnoldporter.com |

*Counsel for Amicus Curiae Johnson & Johnson Health Care Systems Inc.*

15

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because it contains 3,518 words, excluding the parts exempted by Fed. R. App. P. 32(f) and Cir. R. 32(e)(1).   I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief was prepared in 14-point Times New Roman font using Microsoft Word.

Dated: June 25, 2025                    */s/ Jeffrey L. Handwerker*
                                        Jeffrey L. Handwerker

16

**CERTIFICATE OF SERVICE**

I hereby certify that on June 25, 2025, pursuant to Fed. R. App. P. 25(d) and Cir. R. 25, I caused the foregoing Brief to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter who are registered with the Court's CM/ECF system.

Dated: June 25, 2025                    */s/ Jeffrey L. Handwerker*
                                        Jeffrey L. Handwerker