# In the United States Court of Appeals
# for the District of Columbia Circuit

JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.,
*Plaintiff-Appellant*,

*v.*

ROBERT F. KENNEDY, JR., IN HIS OFFICIAL CAPACITY AS SECRETARY, UNITED STATES
DEPARTMENT OF HEALTH AND HUMAN SERVICES, ET AL.,
*Defendants-Appellees*.

On Appeal from the United States District Court for the
District of Columbia, No. 24-cv-3188
(Hon. Rudolph Contreras)

## BRIEF FOR PLAINTIFF-APPELLANT AS PROPOSED JOINDER IN
## BRIEF FOR PLAINTIFFS-APPELLANTS IN NO. 25-5177
## AND CONSOLIDATED APPEALS

Paula R. Ramer
ARNOLD & PORTER
  KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Tel: (212) 836-8000

Jeffrey L. Handwerker
Samuel I. Ferenc
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Tel: (202) 942-5000
jeffrey.handwerker@arnoldporter.com

*Counsel for Appellant Johnson & Johnson Health Care Systems Inc.*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

## A. PARTIES

<u>Plaintiff-Appellant</u>: Johnson & Johnson Health Care Systems Inc.

<u>Defendants-Appellees</u>: Robert F. Kennedy, Jr., in his official capacity as Secretary of Health and Human Services; the U.S. Department of Health and Human Services; Thomas J. Engels, in his official capacity as Administrator of Health Resources and Services Administration; and the Health Resources and Services Administration.

<u>Intervenors-Defendants-Appellees</u>: 340B Health; UMass Memorial Medical Center; and Genesis Healthcare System.

<u>Amici</u>: The following participated as amici curiae in the district court: ADAP Advocacy; CF United; Washington Legal Foundation; Pharmaceutical Research and Manufacturers of America; Biotechnology Innovation Association; National Alliance for Healthcare Purchaser Coalitions; Community Oncology Alliance, Inc.; American Hospital Association; National Association of Children's Hospitals, Inc. d/b/a Children's Hospital Association; Association of American Medical Colleges; America's Essential Hospitals; Arizona Hospital and Healthcare Association; Arkansas Hospital Association; California Hospital Association; Colorado Hospital Association; Connecticut Hospital Association; Delaware Healthcare Association; Florida Hospital Association; Georgia Hospital

Association; Greater New York Hospital Association; Healthcare Association of Hawaii; Healthcare Association of New York State; Hospital Association of Oregon; Idaho Hospital Association; Illinois Health and Hospital Association; Indiana Hospital Association; Iowa Hospital Association; Kentucky Hospital Association; Louisiana Hospital Association; Massachusetts Health & Hospital Association; Michigan Health & Hospital Association; Mississippi Hospital Association; Missouri Hospital Association; New Jersey Hospital Association; New Mexico Hospital Association; North Carolina Healthcare Association; North Dakota Hospital Association; Ohio Hospital Association; Oklahoma Hospital Association; Tennessee Hospital Association; Hospital and Healthsystem Association of Pennsylvania; Texas Hospital Association; Vermont Association of Hospitals and Health Systems; Virginia Hospital & Healthcare Association; Washington State Hospital Association; West Virginia Hospital Association; Wisconsin Hospital Association; and Wyoming Hospital Association.

## B. RULINGS UNDER REVIEW

Johnson & Johnson Health Care Systems Inc. appeals an order and opinion issued on June 27, 2025 by District Judge Rudolph Contreras. ECF Nos. 58 & 59. The District Court denied Johnson & Johnson's motion for summary judgment (ECF No. 18), granted Defendants' cross-motion for summary judgment (ECF No. 41),

and granted Intervenor-Defendants' cross-motion for summary judgment (ECF No. 54).

## C.   RELATED CASES

The following are related cases within the meaning of Circuit Rule 28(a)(1)(c).  All of the listed cases have been consolidated.  The first-listed case, *Novartis Pharms. Corp. v. Kennedy*, No. 25-5177 (D.C. Cir.), is the lead case.

1. *Novartis Pharms. Corp. v. Kennedy*, No. 25-5177 (D.C. Cir.)

2. *Bristol Myers Squibb Co. v. Kennedy*, No. 25-5179 (D.C. Cir.)

3. *Kalderos, Inc. v. United States*, No. 25-5220 (D.C. Cir.)

4. *Eli Lilly & Company v. Kennedy*, No. 25-5221 (D.C. Cir.)

5. *Novartis Pharms. Corp. v. Kennedy*, No. 25-5223 (D.C. Cir.)

6. *Bristol Myers Squibb Co. v. Kennedy*, No. 25-5224 (D.C. Cir.)

7. *Eli Lilly & Company v. Kennedy*, No. 25-5226 (D.C. Cir.)

Johnson & Johnson Health Care Systems Inc. submits this joinder brief pursuant to the proposal in its July 1, 2025 motion in this appeal seeking consolidation with the above-listed cases.

/s/ Jeffrey L. Handwerker
Jeffrey L. Handwerker

## CORPORATE DISCLOSURE STATEMENT PURSUANT TO
## CIRCUIT RULE 26.1

Johnson & Johnson Health Care Systems Inc. is wholly owned by Johnson & Johnson, a publicly traded corporation incorporated under the laws of New Jersey. No other company has a 10% or greater ownership interest in Johnson & Johnson Health Care Systems Inc. Johnson & Johnson Health Care Systems Inc. provides contracting, supply chain, and business support services to other Johnson & Johnson companies.

/s/ Jeffrey L. Handwerker
Jeffrey L. Handwerker

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..............i

CORPORATE DISCLOSURE STATEMENT PURSUANT TO
    CIRCUIT RULE 26.1 ...................................................................................iv

TABLE OF AUTHORITIES ...............................................................................vi

GLOSSARY........................................................................................... viii

JURISDICTIONAL STATEMENT .......................................................................1

STATUTES AND REGULATIONS ......................................................................1

INTRODUCTION ...............................................................................................1

STATEMENT OF THE CASE...............................................................................4

    A.    J&J's Effort to Meet its Obligations and Limit 340B Abuse...............4

    B.    HRSA Rejected J&J's Rebate Model, Claimed J&J Needed
        Preapproval, and Threatened J&J With Termination...........................6

STANDARD OF REVIEW ...................................................................................8

SUMMARY OF ARGUMENT ..............................................................................8

ARGUMENT ......................................................................................................8

    A.    HRSA May Address 340B Pricing Mechanisms Only in the PPA
        After Notice-and-Comment Rulemaking ...............................................8

    B.    HRSA Rejected J&J's Rebate Model Without Considering Key
        Aspects of the Problem ......................................................................13

CONCLUSION .................................................................................................15

CERTIFICATE OF COMPLIANCE.....................................................................17

CERTIFICATE OF SERVICE .............................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Mining Cong. v. Mine Safety & Health Admin.*,
  995 F.2d 1106 (D.C. Cir. 1993)........................................................13

*Amalgamated Transit Union v. Skinner*,
  894 F.2d 1362 (D.C. Cir. 1990)....................................................9, 11

*Astra USA, Inc. v. Santa Clara Cnty.*,
  563 U.S. 110 (2011).........................................................................11

*Becerra v. Empire Health Found., for Valley Hosp. Med. Ctr.*,
  597 U.S. 424 (2022).........................................................................12

*Cigar Ass'n of Am. v. FDA*,
  964 F.3d 56 (D.C. Cir. 2020)............................................................8

*Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*,
  583 U.S. 416 (2018).........................................................................12

*FCC v. Prometheus Radio Project*,
  592 U.S. 414 (2021).........................................................................14

*Nat'l Ass'n of Mfrs. v. NLRB*,
  717 F.3d 947 (D.C. Cir. 2013)..........................................................9

*Nat'l Mining Ass'n v. McCarthy*,
  758 F.3d 243 (D.C. Cir. 2014)........................................................13

*United States v. Bronstein*,
  849 F.3d 1101 (D.C. Cir. 2017)......................................................10

*Vinyl Inst., Inc. v. EPA*,
  106 F.4th 1118 (D.C. Cir. 2024)......................................................15

**Statutes**

5 U.S.C. § 706(2) ...................................................................14

28 U.S.C. § 1291 .....................................................................1

28 U.S.C. § 1331 .....................................................................1

42 U.S.C. § 256b(a) ...............................................................10

42 U.S.C § 256b(a)(1)................................................8, 9, 10, 12

N.D. Cent. Code § 43-15.3-08(3)(b)(3) ...................................15

**Legislative Materials**

H.R. Rep. No. 102-384, pt. 2 (1992) ......................................10

# GLOSSARY

**Br.**        Brief for Plaintiffs-Appellants, *Novartis Pharms. Corp. v. Kennedy*, No. 25-5177 (D.C. Cir. June 18, 2025)

**GAO**       Government Accountability Office

**IRA**       Inflation Reduction Act, Pub. L. No. 117-169, 136 Stat. 1818 (2022)

**HHS**       U.S. Department of Health and Human Services

**HRSA**       Health Resources and Services Administration

**PPA**       Pharmaceutical Pricing Agreement

## JURISDICTIONAL STATEMENT

The District Court had subject-matter jurisdiction under 28 U.S.C. § 1331. It entered judgment on June 27, 2025. JA1134. Johnson & Johnson Health Care Systems Inc. timely appealed on June 27, 2025. JA1165. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATUTES AND REGULATIONS

All applicable statutes are contained in the Brief for Plaintiffs-Appellants in *Novartis Pharms. Corp. v. Kennedy*, No. 25-5177 (D.C. Cir. June 18, 2025).

## INTRODUCTION

Plaintiff-Appellant Johnson & Johnson Health Care Systems Inc. ("J&J") seeks transparency and accountability in the 340B drug pricing program. In 2024, J&J's efforts to curtail documented program abuse using real-time data were halted by the Health Resources and Services Administration ("HRSA")'s decision to terminate J&J from the Medicaid and Medicare programs if J&J offered 340B prices via rebate, a mechanism the 340B statute expressly permits. J&J brought suit to set aside HRSA's decision, which failed to address critical program integrity issues and pending Inflation Reduction Act ("IRA") obligations J&J had raised.

The district court granted summary judgment for HRSA, and J&J now brings this appeal, one of several pending appeals by companies challenging HRSA rejections of 340B rebate models. Pursuant to J&J's July 1, 2025 motion to consolidate, J&J hereby adopts the other appellants' briefs and arguments. This brief

highlights additional points specific to J&J and record evidence reinforcing them.

J&J is a proud participant in the 340B program and is committed to the program's original purpose as Congress established it in 1992: supporting access to reduced-cost medicines for safety-net providers serving large numbers of uninsured and indigent patients. Today, however, the program generates tens of billions in revenue annually for corporate-like hospital systems, national pharmacy chains, pharmacy benefit managers, and for-profit third-party administrators. Those revenues are not reducing drug costs for patients. Indeed, a recent study showed that less than 5% of patients of the "covered entities" now eligible for the program paid reduced prices for 340B medications at the covered entities' "contract pharmacies"—because the entities and their for-profit partners pocket the markup on drugs they acquire at low cost and then sell to patients and insurers at full price.

To help restore the program integrity that Congress intended and the statute requires—and to best meet its dual obligations under 340B and the IRA Drug Price Negotiation Program—J&J proposed that, for purchases of its two IRA-subject drugs by one category of covered entity, J&J would provide the 340B price through rapid post-purchase rebates instead of upfront discounts. The 340B statute expressly authorizes use of rebate models, which are a common means of implementing commercial pricing agreements—particularly where data is needed to authenticate the recipient. By receiving pre-existing purchasing and claims data, J&J's rebate

model would identify 340B claims early enough to avoid paying statutorily-prohibited Medicaid and Medicare rebates on the same claims. J&J's rebate model did not change the 340B price or the number of eligible claims. Instead, the model provided transparency into which claims were eligible, which J&J now cannot determine until months or years after a drug is dispensed (if ever).

J&J engaged extensively with HRSA about the need for its rebate model and the benefits the model would provide. In letters and meetings, J&J explained that the rebate model would use commercially standard claims information to confirm that a covered entity purchased the drug and dispensed it at a 340B-eligible location, advancing program integrity with minimal burden.

In response, HRSA balked. Despite substantial rates of program abuse documented by the Government Accountability Office ("GAO"), HRSA declared that the 340B statute bars implementing rebate models without its approval, and refused to grant it to J&J. HRSA then threatened to terminate J&J from the program, cutting off patient access to J&J products under Medicare and Medicaid, if J&J proceeded without HRSA's permission. J&J sued HRSA in November 2024.

Other manufacturers followed J&J in proposing rebate models. HRSA offered similar responses. Several manufacturers sued HRSA to challenge those actions, and appeals of an omnibus decision for the government in those cases is now before this Court and consolidated under the lead case *Novartis*

*Pharmaceuticals Corporation v. Kennedy*, No. 25-5177 (D.C. Cir.).

Following a district court decision dismissing J&J's action on similar grounds, J&J joins in the *Novartis* appellants' opening brief ("Br."). As that brief details, the 340B statute's text, purpose, structure and history make clear that rebate models were an intended means of effectuating the 340B program and, to the extent HRSA has power to preapprove rebate models, it must do so exclusively through the Pharmaceutical Pricing Agreements ("PPAs") that Congress mandated the agency enter with manufacturers. Those agreements recite the metes and bounds of the program for all manufacturers and ensure that the program is implemented fairly— not in an arbitrary or capricious manner. Because the Secretary has not prescribed a pricing mechanism, manufacturers are free to adopt one of their choosing. HRSA further acted unlawfully by using letters to reject rebate models, and its failure to address the problems of 340B program integrity or pending IRA manufacturer obligations was arbitrary and capricious. The Court should reverse.

## STATEMENT OF THE CASE

### A.  J&J's Effort to Meet its Obligations and Limit 340B Abuse

In 2024, J&J extensively engaged with HRSA about the need for a rebate model to address the lack of transparency in the 340B program and the growing abuse that has resulted. In letters and meetings, J&J described the evolving healthcare landscape and anomalous trends in 340B purchasing of its products, with

340B sales of J&J's drug STELARA increasing about five times as fast as commercial sales—even though the number of uninsured or indigent patients in America has decreased in the last decade. JA1033-37.[1] 340B purchases of J&J's drug XARELTO increased about eight times as fast as overall sales. JA497, JA1036. These data were especially concerning in light of high levels of program abuse documented by GAO and other public sources. *See* Br. 11-15 (citing JA397); JA503.

J&J further explained that, under the prevailing current model for 340B purchasing, manufacturers lack access to claims-level data needed to detect duplicate discounts, both for Medicaid rebates and for the forthcoming "maximum fair price" requirements under the IRA, to which STELARA and XARELTO are subject. JA490-98, JA1030-49. J&J demonstrated to HRSA that offering the 340B price through rebates would prevent duplicate discounts by providing J&J data needed to identify them. JA493-94, JA1007-08, JA1043-44.

J&J thus proposed a rebate model under which disproportionate share hospitals, the category of covered entity that J&J data showed was most prone to abuse, would purchase STELARA and XARELTO at commercial prices and then

---

[1] To better examine the suspect increases, J&J sought and obtained HRSA approval in June 2024 to audit several covered entities, JA1140, but the audit mechanism proved toothless, with covered entities refusing to cooperate. J&J detailed the challenges it faces in exercising its audit rights in its amicus brief in the *Novartis* appeals. Br. of Johnson & Johnson Health Care Sys. Inc. as *Amicus Curiae* in Supp. of Reversal, *Novartis Pharms. Corp.*, No. 25-5177 (D.C. Cir. June 25, 2025).

receive a rebate to realize the 340B ceiling price within 7-10 days of submitting certain purchase and claims data that hospitals already collect or can easily obtain but will not provide to manufacturers. JA491, JA493-97, JA633, JA1007-08. J&J committed to paying rebates within this 7-10 day period. JA1064; *see* JA494, JA496. J&J's rebate model also would allow rebate payments based only on purchase data up to a cap, without requiring claims data. JA1064. As a result, covered entities would receive rebates before their upfront payment is due to their wholesalers for drugs purchased under standard payment terms—giving the covered entities the benefit of that financial "float" for up to three weeks. JA1064; JA505.

## B. HRSA Rejected J&J's Rebate Model, Claimed J&J Needed Preapproval, and Threatened J&J With Termination

HRSA posed a series of questions about J&J's rebate model, JA450-52, and J&J responded to each in detail, explaining its authority to implement the rebate model and the minimal burden it would place on covered entities (who already collect or may easily access the required data), JA490-514, JA606-630, JA1043-45. But without meaningfully engaging further with J&J's proposal, HRSA sent J&J and published online a letter declaring that the 340B statute gives the agency authority to preapprove rebate models and that unapproved rebate models violate the statute. The letter also threatened J&J with termination from the 340B program—meaning the loss of all patient access to J&J drugs under Medicare and Medicaid—unless J&J halted implementation of its rebate model by September 30, 2024. JA454-55.

6

J&J promptly responded that rebate models are lawful, that HRSA lacks preapproval authority, and that any authority HRSA has to address pricing mechanisms may be exercised only through its PPAs, not in ad hoc letters. JA633-37. But HRSA replied by repeating its public threat of termination, JA459, and J&J was forced to indefinitely suspend its rebate model plan, JA639-40. J&J corresponded and met with HRSA again in October 2024 to continue discussing its rebate model's features and benefits and to seek HRSA's clarification of the circumstances under which the agency would approve a rebate model (assuming that approval were required). JA1052-66, JA1168-78. HRSA declined to grant approval or substantively engage further with J&J's proposal or the evidence J&J presented.

J&J sued HRSA in November 2024, alleging that the agency acted unlawfully in rejecting J&J's rebate model. JA1082. The parties briefed cross-motions for summary judgment, and the court granted a motion to intervene by two covered entities and a hospital association. JA1133. On June 27, 2025, following a similar decision in the *Novartis* actions and without holding a hearing, the district court granted the government and intervenors' summary judgment motions. JA1134. The court held that the 340B statute grants HRSA preapproval authority for rebate models and rejected J&J's arguments that HRSA had to use notice-and-comment rulemaking for its termination threats and that HRSA's rejection of J&J's rebate model was arbitrary and capricious. JA1146-63. J&J appealed. JA1165.

## STANDARD OF REVIEW

"When a district court reviews agency action under the APA," this Court "review[s] the district court's decision de novo." *Cigar Ass'n of Am. v. FDA*, 964 F.3d 56, 61 (D.C. Cir. 2020).

## SUMMARY OF ARGUMENT

J&J joins the arguments set forth in the *Novartis* appellants' appeal, which apply equally to J&J, and adds that the district court in J&J's case erred on additional grounds, reinforcing why this Court should reverse both decisions below.

## ARGUMENT

### A. HRSA May Address 340B Pricing Mechanisms Only in the PPA After Notice-and-Comment Rulemaking

Like the district court in the *Novartis* cases, the district court below misinterpreted the 340B statute and held that the government can regulate manufacturers' discount and rebate models outside the PPA. It cannot.

The 340B statute provides:

**(a) Requirements for agreement with Secretary**

> **(1) In general**
>
> The Secretary *shall enter into an agreement* with each manufacturer of covered outpatient drugs *under which* the amount required to be paid (*taking into account any rebate or discount, as provided by the Secretary*) to the manufacturer for covered outpatient drugs … does not exceed [the ceiling price].

42 U.S.C § 256b(a)(1) (emphases added). To the extent the plain text empowers HRSA to provide how to "tak[e] into account any rebate or discount" for the 340B

program, it does so only through a single regulatory avenue—the PPA. 42 U.S.C. § 256b(a)(1); *see* Br. 26-33. Congress did not grant the Secretary freewheeling preapproval authority; any ability to dictate requirements for rebate models must be exercised only "under" the Secretary's "agreement with each manufacturer." 42 U.S.C. § 256b(a)(1). The text, structure, purpose, and history of the statute confirm this limitation. Nevertheless, the district court below repeated the *Novartis* court's error and found that HRSA has an absolute preapproval power. JA1146-50. But as the *Novartis* brief describes, Br. 26-29, that conclusion is untethered from the text.

The district court below compounded the *Novartis* court's errors in rejecting J&J's additional arguments. J&J argued that Congress acted purposefully when it addressed HRSA's authority to regulate pricing mechanisms in the provision set forth above, titled "Requirements for agreement with Secretary," which discusses exclusively the contents of the PPA and the authority HRSA may exercise "under" its terms. As this Court has made clear, "[w]here Congress prescribes the form in which an agency may exercise its authority … [courts] cannot elevate the goals of an agency's action, however reasonable, over that prescribed form." *Amalgamated Transit Union v. Skinner*, 894 F.2d 1362, 1364 (D.C. Cir. 1990); *see Nat'l Ass'n of Mfrs. v. NLRB*, 717 F.3d 947, 966 (D.C. Cir. 2013) (Henderson, J., concurring) (same). In 42 U.S.C. § 256b(a)(1), Congress prescribed the exclusive form through which HRSA may exercise any authority it has—the PPA—precluding regulation

by ad hoc letters to manufacturers. *See United States v. Bronstein*, 849 F.3d 1101, 1109 (D.C. Cir. 2017) (noting a statutory section's "scope is apparent from its title").

The district court faulted J&J for emphasizing the title of 42 U.S.C. § 256b(a), "Requirements for agreement with Secretary," and "fail[ing] to mention, let alone explain," the title of paragraph (a)(1): "In general." JA1151. The district court suggested that title indicates that paragraph (a)(1) does not exclusively address the contents of the PPA. But the court overlooked the text immediately following the title: "The Secretary shall *enter into an agreement* with each manufacturer … under which the amount required to be paid (taking into account any rebate or discount, as provided by the Secretary) to the manufacturer … does not exceed" the ceiling price. 42 U.S.C. § 256b(a)(1) (emphasis added). The "In general" title cannot be divorced from the statute's words, which make clear that the Secretary may provide how "the amount required to be paid" should "tak[e] into account any rebate or discount" only "under" the "agreement" that "[t]he Secretary shall enter." *Id.*

The district court also misread the legislative history. JA1153. The primary House committee report on the legislation that established 340B stated that Congress "d[id] not specify" whether price reductions would take place through a rebate or discount, and that it "expects that the Secretary of HHS, in developing these agreements, will use the mechanism that is the most effective and most efficient." H.R. Rep. No. 102-384, pt. 2, at 16 (1992). Plainly, the Committee expected HHS

to address pricing mechanisms, if at all, in "developing" its "agreements" with manufacturers. But the district court misinterpreted this language, reading it as only "emphasizing the discretion delegated to the Secretary rather than confining that discretion to PPAs." JA1153. That refusal to grapple with Congress's plain intent is a textbook case of a court "elevat[ing] the goals of an agency's action … over [Congress's] prescribed form." *Amalgamated Transit Union*, 894 F.2d at 1364.

The district court also claimed that the 340B statute cannot limit exercise of agency authority over pricing mechanisms to the PPA because then "the parenthetical phrase 'as provided by the Secretary' would be rendered surplusage— rebates or discounts would already be 'provided by the' PPAs, not the Secretary." JA1150-51. That simply misreads the text; the PPA is the vehicle for the Secretary to "provide[]" for details of pricing mechanisms. Further, though it noted that PPAs are "'uniform agreements'" that "'recite the responsibilities that § 340B imposes,'" the district court acknowledged that PPAs "may include additional terms," JA1151 (quoting *Astra USA, Inc. v. Santa Clara Cnty.*, 563 U.S. 110, 113 (2011)). PPAs indeed contain terms beyond what the statute requires, *see* Br. 35 (identifying extra-statutory PPA terms), and terms addressing pricing mechanisms could be added.

The district court also overstated the scope of Congress's delegation in the "taking into account" parenthetical. "[A] parenthetical is typically used to convey an aside or afterthought"—not to establish a discrete source of independent agency

authority. *Becerra v. Empire Health Found., for Valley Hosp. Med. Ctr.*, 597 U.S. 424, 440 (2022) (cleaned up). Here, the phrase "as provided by the Secretary" modifies the entire preceding phrase "taking into account any rebate or discount"; Congress's placement of parentheses around the full phrase indicates that it intended the phrase to operate as "a unified whole." *Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 583 U.S. 416, 440 (2018). As a result, the "taking into account" parenthetical, at most, authorizes the Secretary to provide *how* a manufacturer should "tak[e] into account" a pricing mechanism to ensure that covered entities pay only the ceiling price. 42 U.S.C. § 256b(a)(1). Contrary to the district court's view, JA1148-49, that interpretation does not read "as provided by the Secretary" out of the statute; rather, the Secretary has authority to provide details of how manufacturers must offer and account for the ceiling price. In any event, whatever the parenthetical's proper reach, HRSA can exercise any authority its text grants exclusively through the PPA.

Finally, if HRSA plans to terminate manufacturers for pursuing rebate models, that action requires notice-and-comment rulemaking. As HRSA has conceded, rebate models adhere to the statutory requirement that manufacturers offer drugs at or below the ceiling price. That is true with or without HRSA preapproval. HRSA's warning letters, however, announced that pursuing unapproved (but otherwise lawful) rebate models will result in termination proceedings. JA455, JA459. Contrary to the findings of the court below, JA1156, nothing in the statute

authorizes this "unapproved-rebates-mean-termination" policy; rather, HRSA's letters "purport[ed] to impose legally binding obligations or prohibitions on regulated parties" and made violations "the basis for an enforcement action." *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 251 (D.C. Cir. 2014) (Kavanaugh, J.). Stated another way, "in the absence of [HRSA's pronouncement], "there would not be an adequate legislative basis for enforcement action." *Am. Mining Cong. v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1112 (D.C. Cir. 1993). As a result, the new policy is a legislative rule that requires notice-and-comment rulemaking. *See id.*

## B. HRSA Rejected J&J's Rebate Model Without Considering Key Aspects of the Problem

Breaking from the district court in the *Novartis* case, which granted summary judgment to non-appellant Sanofi because HRSA "provided no explanation for its failure to address … valid concerns" about "unlawful duplications and diversions," JA400, the district court below held that HRSA addressed all aspects of the problem in rejecting J&J's rebate model. The district court reached that erroneous result and avoided *Novartis* only by rewriting the question presented, asking whether HRSA acted reasonably in finding it had preapproval authority. JA1161-62. The proper question is whether HRSA failed to consider key aspects of the problems J&J raised.

It did. The district court itself stated that HRSA's letters "did not address the problems of 340B Program integrity or pending IRA obligations for manufacturers that J&J described as motivating its proposed shift in pricing models." JA1162.

That is the precise ground on which the *Novartis* court granted summary judgment to Sanofi. *See* JA399-401. But the court below skirted that conclusion by claiming "the legal question HRSA responded to in its letters" to J&J did not implicate those issues. JA1162. "Were the Agency's position that J&J's rebate model could never be implemented at all," the court said, "then J&J would have a strong argument that HRSA's explanations are lacking." JA1162. Setting aside that one of HRSA's letters to J&J asserted rebate models are per se unlawful, JA454, and that HRSA sent a similar letter to Sanofi, JA811-12, the J&J court effectively gave HRSA a pass by failing to conduct meaningful judicial review. But courts have an unflagging duty to enforce the requirement that agency action be "reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021); *see* 5 U.S.C. § 706(2). The district court's narrowing of the question presented was error.

The district court also misunderstood the current "replenishment models" and their key commonalities with rebate models, *cf.* Br. 46-48 (addressing the *Novartis* court's similar errors), and expressed confusion about the need for J&J's rebate model and the data it provides, JA1140, JA1158. But the record reflects J&J's robust engagement with HRSA on those topics: J&J explained in detail that its model would provide data needed to address growing issues with duplicate discounts and enable J&J to comply with its IRA de-duplication obligations while imposing minimal burdens on covered entities. JA490-603, JA606-641. The district court's "struggle[]

to understand the necessity of J&J's rebate model as it relates to program integrity" and the IRA disregarded extensive record evidence of program abuse. JA1163.

The district court also mistakenly assumed that the claims data the rebate model uses are readily available. JA1158-59, JA1163. But covered entities currently do not provide that data to manufacturers, and several states have passed statutes purporting to *prohibit* manufacturers from trying to obtain it. *See, e.g.*, N.D. Cent. Code § 43-15.3-08(3)(b)(3). Finally, the district court wrongly approved HRSA's failure to explain the inconsistency between its acceptance of covered entities' voluntarily adopted replenishment models and its rejection of J&J's effort to similarly adopt a new rebate model. JA1159. The court instead supplied its own perplexing rationale, reasoning that HRSA could "permissibly treat these two groups differently" because "covered entities are the beneficiaries" of the program, rather than properly viewing HRSA as a neutral administrator to all program participants. JA1159. But that analysis violated the "bedrock principle" that "agency action is upheld only 'upon the validity of the grounds upon which the [agency] itself based its action.'" *Vinyl Inst., Inc. v. EPA*, 106 F.4th 1118, 1126 (D.C. Cir. 2024) (citation omitted). The district court erred in deferring to HRSA's unexplained actions.

## CONCLUSION

For the foregoing reasons, and those set forth in the *Novartis* appellants' brief, the Court should reverse.

Dated: July 8, 2025

Respectfully submitted,

/s/ *Jeffrey L. Handwerker*

Paula R. Ramer
ARNOLD & PORTER
  KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Tel: (212) 836-8000

Jeffrey L. Handwerker
Samuel I. Ferenc
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Tel: (202) 942-5000
jeffrey.handwerker@arnoldporter.com

*Counsel for Plaintiff-Appellant Johnson & Johnson Health Care Systems Inc.*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g), I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 3,582 words, excluding the parts exempted by Fed. R. App. P. 32(f) and Cir. R. 32(e)(1). I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief was prepared in 14-point Times New Roman font using Microsoft Word.

Dated: July 8, 2025

*/s/ Jeffrey L. Handwerker*
Jeffrey L. Handwerker

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2025, pursuant to Fed. R. App. P. 25(d) and Cir. R. 25, I caused the foregoing Brief to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter who are registered with the Court's CM/ECF system.

Dated: July 8, 2025

*/s/ Jeffrey L. Handwerker*
Jeffrey L. Handwerker